We have four argued cases this morning. The first one is number 21-2060, Aspects Furniture International v. United States. Ms. Moya. Good morning, your honors, and may it please the court. For the record, my name is Laura Moya. I am with the law offices of Robert W. Snyder, and I am appearing today on behalf of Consolidated Plaintiff's Appellants, Aspects Furniture International, Inc., and IMSS LLC in Consolidated Court Number 21-2060. This case involves U.S. Customs and Border Protection's untimely liquidations of 10 entries of wooden bedroom furniture of Chinese origin imported by AFI in 2014, and one entry re-liquidated by U.S. Customs and Border Protection. On the notice issue, just jumping into the issues, on the notice issue, how do you deal with Fujitsu, which seems to suggest, you know, that notice, an issuance of a decision or receipt of a decision, a court decision, isn't necessarily going to constitute notice because it has to be unambiguous. So one of the, we believe there are two main differences between the facts underlying Fujitsu and the facts present here, one of them being that the decision in the Fujitsu case was a decision not in harmony with the Department of Commerce's final results, which is not the Timken situation contemplated under 1516 AE, whereas in this case, the underlying court decision, the one issued by the CIT in the AFMC case, Court Number 16-70, it was a decision in harmony with the Department of Commerce results, meaning that the court didn't change anything. Why does that make a difference? Well, we believe that the statute makes a difference in that respect. But the opinion didn't say anything about suspension or lifting of the suspension, right? It said nothing about it. Right, and on that matter- So how would somebody know then that that opinion was lifting the suspension? On that matter, we believe that the court in international trading, this court in international trading addressed that issue. And it actually, it stated that even though, okay, yeah. So actually in Fujitsu, I'm sorry. The court in Fujitsu held that publication of notice of the decision in the case met the requirements of 1504D despite the fact that neither the court decision nor Commerce, the Commerce Federal Register notice specifically mentioned suspension. And this is at 283 F3rd at 1383. You're saying the decision in this case specifically mentioned suspension? No, it did not. But I'm saying that the court in Fujitsu held that that was not a requirement. First and foremost, the statute doesn't require that, the deemed liquidation statute. And there have been numerous opinions by this court as well that have held that- Actually, what the court in Fujitsu says, it says that Fujitsu general does not even mention the suspension of liquidation that was ordered by the CIT. We do not think it would be consistent with the statutory scheme to hold that Commerce's publication of notice of a court decision and customs receipt of notice are synonymous for purposes of six month time period. How is that supporting you? If I may just regroup for a second. Give me one second, please. Fujitsu, 1383. And well, in that case, the court was comparing the publication of the final results and the federal register by the Department of Commerce and the liquidation instructions. And it held that the publication... No, give me one second. The decision was not sufficient in Fujitsu to constitute that. So the publication of the decision, but my understanding of your argument here is that you would like discovery to see whether customs received was served with the decision on or about May 12th, which potentially would reduce the time available for liquidation by Commerce. But the fact is that even if customs had been served by the May 12th decision, the May 12th decision doesn't tell you when the stay expired, right? It doesn't, but this is not a requirement under the statute. That's the problem. So even if they've been served the decision reading it, you couldn't necessarily tell on the face of the decision that the stay had expired. Right, but even the quote from Fujitsu that does not say that that is one requirement. It just stated that in for the facts present in Fujitsu. Well, why don't you explain why it makes a difference to you as to what the date of the notice is. Is it really that you want this to go back for discovery or does this alter whether certain of the entries were deemed liquidated? I guess just to take a step back, what we believe is that in this particular case, it was the court that provided the notice. And the lower court did not wanna entertain that aspect and figure out whether indeed the court had provided that notice. And it was the court, I believe in international trading, this court in international trading that contemplated the fact that the court  You're challenging the date of issuance or the date of notice on the CIT's opinion, correct? Why does it make a difference to you? When you responded to Judge Dyck's question concerning discovery, you want more discovery? In particular, just with respect to whether the AFMC opinion was served on customs, yes. And this is because we understand that this court's precedent to require a separate mechanism. More discovery as to what? As to whether the decision was served on customs or not. The precedent in Fujitsu, I believe Why does it make a difference to you? Because this court precedent requires that a court give notice through a separate mechanism. And that is the aspect that was missing in this case, the separate mechanism. I just wanna make sure you understand the question. The question is, why do you care about the date of when notice was received? What impact does that have on your client? Well, that starts the six month liquidation timeline for customs. And if the liquidation doesn't occur within six months, then what happens? Then the consequence is deemed liquidation. The entry is deemed liquidated as a duty And the duty that you indicated. Yes, as entered, yes. So if it was served on May 12th or May 13th, liquidation would have been untimely. Right, oh yeah, right. And, but they could still, and this relates to the entry number 10, they could still have re-liquidated within That is the second issue. That is the second part of the court's decision that we take issue with. Particularly with respect to It's related to the first part too. Because even if you were to prevail on the notion that they received notice on or about May 12th, customs could still have re-liquidated. Right, but it didn't do so in this case. Well, that's the question, whether that would be harmless error. Right, and we take issue with the court's decision and that particular aspect as well. For two main reasons, if I may proceed with that. How was your client harmed? Please do proceed, but I specifically want to know in which way you think your client was prejudiced. So, the court provided, held, that our client failed to establish prejudice. But pursuant to Intercargo, prejudice for purposes of harmless error means injury to an interest that the statute, regulation, or rule was designed to protect. What's the prejudice here? The prejudice here was not providing, basically not respecting the statutes. Yeah, yeah, but what would you have done? You would have protested, but you not identified any ground for protest. Certainly, but there is a difference between protesting a liquidation and a re-liquidation. They are different legal constructions. They have different requirements. How could you ignore that? Suppose that they had actually re-liquidated and you protested that. Let's talk about entry number 10. Well, there is a two, sorry. How could you have succeeded in challenging the re-liquidation? Well, if that had been an actual re-liquidation, there is a chance we might not have protested that, or we would have protested it from a notice perspective, for example, because 1501 contains a notice requirement in order for the re-liquidation to produce effects, to be a valid re-liquidation. But I'm assuming, my hypothetical is, assuming there was a re-liquidation, and they gave you notice that it was a re-liquidation, what remedy would your client have had under those circumstances? I mean, I wouldn't wanna, I feel like this hypothetical is going a little too far in the sense that we don't have notice, though. What would you have done differently? Had you had notice, what would you have done differently? We would have re-evaluated the situation, probably. Well, that's not exactly true. We were working with a different record up until the point when the court was wanting to raise this issue. The court below said it would have made no difference to you regardless of which notice went into effect or became effective, whether it was a CIT opinion or the notice from Commerce to Customs. The CIT said it would have made no difference with respect to your deemed liquidation wish. Explain to me why the court was wrong in that. We believe that the court ignored basically the plain language of the statute, 1501 states that Customs is allowed to perform voluntary liquidation, it's not. Excuse me. Do you understand what I'm saying? That the court said it would have made no difference to the ultimate decision of what was deemed liquidated or not. It would have made no difference regardless of which date you select. And explain to me why the court was wrong in that. Well, it did make a difference because this makes Customs December 1st event timely, likely, whereas if the record were to be respected, Customs event on December 1st would have been deemed untimely under 1504D. Is there something different about the process of liquidating versus reliquidating that makes it so it matters what label? There is, yes. Reliquidation is supposed to correct some aspect of liquidation, whether it is the rate or the fact that a liquidation is untimely. And in this case, that's what should have happened. But there was deemed liquidation. And for instance, in the, there was a liquidation. You think there's deemed liquidation on a particular date. Yes. And then the government reliquidates, but they call it liquidation. They did not liquidate, no, reliquidate. They liquidated. And that was posted December 1st. It was posted untimely. It's in a way, the order in which these events take place, it's somewhat hard to grasp because deemed liquidation is such an abstract concept. So it requires Customs to not liquidate at all within the six months or to liquidate untimely, which is what happened here. You become aware of deemed liquidation only when you look back in time. The statute puts a burden on Customs to determine a protest within six months. And if they do not decide the protest within six months, then those entries are deemed liquidated. That's what you would like to, that's where you're headed here. Right, yes. You want to get to the point where these entries are deemed liquidated. And you're arguing that those six months is based on when an effective notice was given. Yes. The Court of International Trade said it makes no difference whether you take this date or that date with respect to whether those entries are going to be deemed liquidated. What is wrong with that decision? Why is that wrong? Well, the court said so because it decided to apply the harmless error rule to salvage these deemed liquidations. And we believe that that rule does not apply to the entries here for two main reasons. The first one being that it should be applied to 1504D, not 1501, because it should be applied to our Customs date, which was liquidation. And second, even if we were to assume that, okay, it was a re-liquidation in practice, even though the record clearly doesn't support that, it actually contradicts that this is what happened in practice, we believe that, we have pointed to quite a few cases in our reply brief that do not support the courts. We believe do not support the courts. You're almost there. I have one more question. Yeah. And that is, let's assume that we were to agree with you that the entries, all the entries were, the liquidation was untimely. Is the same situation with respect to prejudice exist with respect to the entries other than item 10 as exist with respect to item 10? Yes, we believe there is no difference to be made between them. In all 10, in the case of all the 10 entries, what Customs did in practice was a liquidation that is governed by 1504D. Therefore, the court's harmless error analysis should have been made with respect to 1504D. And had the court done that, the argument would have gone nowhere because that statute, everybody agreed it's undisputed, is not subject to a harmless error analysis. Okay. All right. Unless my colleagues have further questions at this time, we're out of time. We'll give you two minutes of rebuttal and we hear from Ms. Powell. Good morning. May it please the court. The trial court's decision denying appellant's request for discovery is correct. As this court mentioned, the Fujitsu case clearly states that service, in that case, service was attempted, was actually made on DOJ, and the court held that that service was incorrect to provide notice to Customs. In this case, in the AFMC case, Customs wasn't a party to that case, and Commerce was a party, so even if the court served notice to Customs, it wouldn't provide, it wouldn't, excuse me, even if the court provided the AFMC decision to Customs, it wouldn't provide service, it wouldn't provide notice. Number one, the decision did not mention liquidation suspension at all. It didn't mention the lifting of the suspension. It didn't even mention the injunction. The actual decision is a jurisdictional decision. It didn't even mention the merits. So if that decision was served on Customs, there's nothing in that decision that would let Customs know that the suspension had been lifted. Or does it also include when it had been lifted? The decision. If it had been lifted, there's no indication of when? The decision itself doesn't state anything about suspending or suspension of entries or its injunction. You'd have to read it together with the earlier order to get the point. If you read the decision together with the order, the order and the injunction, so it's three. It's the decision, the order, and the injunction. The injunction itself tells you when it expires. It expires on May 12th, just by its own language. So if you're gonna read them, you read them all three together. But even in that sense, in this case, the decision itself wasn't final till May 12th, and if you serve the decision on Customs, as a matter of law, it couldn't have served on its own as notice. Okay, now what about entry number 10, which was admittedly untimely in the harmless error analysis? Yes, Your Honor. The harmless, we submit in terms of harmless error that the court was correct. Number one, appellate claims that it did not get notice. It did receive notice, and that notice is in the record, and I believe it is 504. So on that instance, we submit the appellant did get notice. That notice actually had the date that it was posted. It actually informed the appellant that there was a change, meaning an increase in the duties. It says change, increase. So in terms of harmless error, the notice that they had, even though it says liquidation, provided all the information that the appellant needed to protest. So here, even though Customs called it a liquidation, in reality, it's functionally the same. It's equivalent to a re-liquidation. But I guess I'm a little troubled by the notion that if, in the situation with respect to item number 10, if there had been a legitimate ground for protest, and they had not protested because they thought the liquidation was untimely, and they didn't view it as being the equivalent of a re-liquidation, then there would be, in that circumstance, prejudice, wouldn't there? If the appellant didn't, if the appellant didn't hear. If the appellant had a good ground for protest. Yes. And had not received notice that this was a re-liquidation, there would be a claim that the error was harmful, right? No, because in this, no, in this case, the appellant, whether it's a re-liquidation or a liquidation. No, I'm not talking about this case. I'm talking about a hypothetical case in which there is a protest, which would have some merit to it. If there was a potential for a meritorious protest, it would be harmful error not to give notice that this was a re-liquidation rather than a liquidation, right? Yes, if the facts were different. And there could be a set of facts where on the re-liquidation, custom did something different, like added interest or something that was different from the re-liquidation. So the notice would let the importer know, oh, there's something different going on than the re-liquidation. Here, what happened in this case is that plaintiff received a notice and filed a protest. That protest means that this liquidation is open. You can bring any argument relating to that liquidation. And we are here arguing re-liquidation and arguing whether there's a deemed liquidation. So here, there was no protest. Even if this notice said re-liquidation, they would have still protested. It's not just that there wasn't a protest, though they haven't identified a ground for protest. They haven't identified anything they would have done differently. Yes, that's the point I'm making. They haven't identified anything that they would have done differently. On this case, the liquidation is open, and we are arguing here the re-liquidation issue. We're arguing the deemed liquidation issue. We're arguing all the issues relating to all the decisions that went into Customs' assessment of duties. So there is no prejudice. This is their day in court. They had it below. There's no prejudice here. Thank you. Anything further? I just wanted to mention, back to on the notice issue, I just wanted to sort of make it a little bit, because I think the parties sort of left it where there wasn't any discovery on notice. Actually, this is a consolidated case, and there was discovery on notice. If you look back into the record, the issue really with the discovery was about the May 30th liquidation instructions and how those came into being. So it's not like the court didn't give the plaintiff or the appellant any discovery. They had discovery. It's just that here, the court felt that once it looked at all the facts, discovery wasn't necessary. Well, had they asked for further discovery about whether the May 12th decision had been served? Yes, they did ask for that discovery. And they didn't get that, right? They didn't, because the court had already, the court had determined there's no circumstance that that decision, the service of that decision alone could constitute notice as a matter of law. And they haven't established it in their brief and not at this whole argument. It's missing the unambiguous aspect that Fujitsu and actually CMEX actually requires. So even if, under the best circumstances, customs was served, and again, there's no case law stating that service by the court on customs constitutes notice of removal or suspension. But even under those circumstances, that decision alone wouldn't, as a matter of law, constitute notice. But there are instances where court opinion can be unambiguous and provide that type of notice, right? Oh, absolutely. I believe a court can have a decision that's fairly comprehensive. In this court, it was a jurisdictional decision. So the issues in the decision itself just related to jurisdiction. Okay, anything further? No, Your Honor, thank you. Okay, thank you, Ms. Molly. Ms. Molly, you've got two minutes. Thank you for the additional time, appreciate that. I would like to go back to the government's argument that in Fujitsu, the service wasn't valid because customs wasn't a party to that lawsuit. In fact, CBP was represented by counsel at the hearing that the court held before issuing its decision. I believe that is even in the decision itself. So customs had its own counsel present there because it is the practice of customs counsel to be a part of the team, of the defense team in cases like this. The other aspect that I would like to touch on. Even though customs wasn't a party to the case, its lawyer was there? Yes, they work as a counsel on these kinds of cases because customs, both commerce and customs have an interest in these types of cases. The other aspect is that even though the AFMC decision didn't mention anything about the removal of suspension, it was an unambiguous decision. The court in several notes, it noted that the duty rate, the final duty rate that the Chinese exporter that was under review, it remained the same. And it actually, in its conclusion, which was very important, we believe, the court said that the final results were effectively not challenged in the AFMC action. So we think that under this court's precedent, the reasonable CBP official standard has been developed to work with these kinds of situations where a court provides a notice, or at least to help the courts in finally finding a situation where the court provides notice. And in this case, we believe that the decision in the AFMC was the separate mechanism that the International Trading Court contemplated. And it was unambiguous because it clearly stated that the final duty rate was unchanged. So we believe that May 12th is the applicable date based on the court providing notice. Okay, thank you, Ms. Moya. Thank you. May 12th, counsel, case is submitted.